THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | |
| | : | No. 3:21-CR-39-CAR-18 |
| TANYA ALDANA, | : | |
| | : | |
| Defendant. | : | |
| | : | |

## ORDER ON PETITION FOR REVOCATION OR AMENDMENT OF THE MAGISTRATE JUDGE'S DETENTION ORDER

Before the Court is Defendant Tanya Aldana's Petition for Revocation or Amendment of the Detention Order. On January 12, 2023, the Magistrate Judge conducted a detention hearing and ordered Defendant detained pending trial. Defendant now seeks reconsideration of that order and requests the Court allow her bond. The Government opposes Defendant's release. The Court held an evidentiary hearing on March 8, 2023. After conducting a *de novo* review, the Court agrees with the findings and conclusions of the Magistrate Judge and **DENIES** Defendant's Petition [Doc. 359]. Accordingly, Defendant will remain detained pending trial.

## BACKGROUND

On November 8, 2022, a grand jury returned an eleven-count superseding

1

indictment against Defendant Aldana and 19 co-defendants charging Ms. Aldana with one count of Conspiracy to Possess with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 846 in connection with 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii)(II), and one count of Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h). On January 5, 2023, Defendant was arrested and detained pending a detention hearing at her initial appearance.

On January 12, 2023, Defendant pled not guilty at her arraignment, and United States Magistrate Judge Charles Weigle conducted a detention hearing. At the hearing, the Government requested that Defendant be held in custody pending trial based on her risk of flight. At the conclusion of the detention hearing, Magistrate Judge Weigle granted the Government's request, finding the Government proved by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure Defendant's appearance as required based on the weight of evidence against her, the lengthy period of incarceration she faces if convicted, her frequent travel across the border to Mexico, and her significant ties to a Mexican drug cartel.[1]

At the detention hearing, the Government proffered that Defendant is one of two money couriers for co-defendant Albert Ross's international drug trafficking

---

1  Detention Order [Doc. 353].

2

organization. In a two-year period, Ross's drug trafficking organization was provided over 500 kilograms of cocaine supplied by co-defendant Jose Pineda Perez ("Pretty Boy"), who resides in Mexico and is a member of CJNG (Cartel Jalisco Nueva Generacion), a notoriously violent drug cartel. The FBI began investigating Defendant Aldana in connection with this case in 2021. The investigation showed that she met approximately 10 times with co-defendant Richard Cornelius, Albert Ross's "right-hand man." Mr. Cornelius flew to Mexico City to meet with the cartel to broker cocaine transactions. Each time Defendant Aldana and co-defendant Cornelius met, he gave her approximately $80,000 in United States currency. Mr. Cornelius' cell phone records showed text messages linked to Defendant Aldana's phone corresponding to their meetings.

When Athens FBI began investigating Defendant Aldana, they realized she had been the target of an earlier FBI investigation in North Carolina in which her husband, Oscar Pineda, had provided multiple kilograms of methamphetamine to an undercover agent. Mr. Pineda had provided the undercover agent a bank account in Defendant Aldana's name. In examining those bank account records, they discovered that Defendant Aldana was transferring money back to Mexico. When authorities executed a search warrant on the stash apartment they located for Mr. Pineda, they found 250 grams of methamphetamine, a Glock 19 pistol, and a financial ledger they believed showed drug transactions with corresponding money amounts sent back to Mexico. The stash

apartment was rented by Defendant Aldana in one of her known aliases. On the same date, June 30, 2020, authorities also executed a search warrant on Defendant Aldana's Cobb County, Georgia residence. They found a ledger with numerous names and corresponding international money transfer services written out to the side of the names.

After Defendant Aldana's arrest in this case on January 5, 2023, they executed a search warrant on her residence and found over $9,000 in United States currency in large denominations, a money ledger with a one-dollar bill, which is common for narcotics traffickers. Money couriers provide the number from the dollar bill during transactions, so that only the person handing off the money and the person receiving the money will know the serial number of the one-dollar bill.

The Government also proffered Defendant's border cross records from the United States Customs and Border Patrol. The records showed that Defendant Aldana crossed the border between Mexico and the United States 20 times since 2017. Fifteen of those times occurred in the last two years. Finally, the Government stated that after a search of her residence, officers seized tax records from 2021 showing she had a gross income of slightly more than $17,000, yet she drives a Mercedes and had over $9,000 in her residence.

Defendant argued that she was not a flight risk, and there were conditions or a combination of conditions that could reasonably assure her appearance in court.

Defendant proffered that she and her mother run a money transfer business in three locations around the Atlanta area; the businesses passed the IRS's audit under Bank Secrecy Act from October 1, 2021 through March 31, 2022; her border crossings into Mexico amount to four times per year, with the latest being for a medical procedure; Defendant has three minor children for whom she is the primary caretaker; her children are in school in the Atlanta area where she resides; she has family and community ties to the area; and she has no prior criminal history.

Defendant now challenges Judge Weigle's Detention Order, arguing that the Government has not met its burden of proving that there are no conditions of release that can adequately ensure she will appear as required. The Court held a hearing on March 8, 2023.

## STANDARD OF REVIEW

"Pursuant to 18 U.S.C. § 3145, following a magistrate's order that a detainee be held without bond pending trial, the detainee may move the district court to revoke or amend the magistrate's pretrial detention order." [2] The district court reviews the magistrate's denial of bail *de novo*.[3] The Bail Reform Act governs the pretrial release or

---

[2] *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988) (citing 18 U.S.C. § 3145(b)).
[3] *United States v. Hurtado*, 779 F.2d 1467, 1480-41 (11th Cir. 1985) ("the district court must undertake an independent review of the case, enter its own findings in writing, and set forth the reasons supporting its decision, making provisions as set forth in subsection [18 U.S.C. § 3142](i)(1)-(4).").

detention of defendants.[4]  Detention is required when the judicial officer finds by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the person as required.[5]  To determine whether a defendant poses a flight risk, the judicial officer should consider the following four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.[6]

But this does not require the district court to conduct a *de novo* hearing.[7]  Instead, "the district court has two options."[8]  First, the district court may explicitly adopt the magistrate's detention order if after "a careful review of the pleadings and the evidence developed at the magistrate's detention hearing," the district court determines "the magistrate's factual findings are supported and … the legal conclusions are correct."[9]  Second, the district court may decide that additional evidence is required and conduct an

---

[4] 18 U.S.C. § 3142 *et seq*.
[5] *Id.* at § 3142(e); *King*, 849 F.2d at 488-89.
[6] 18 U.S.C. § 3142(g)(1)-(4).
[7] *United States v. Gaviria*, 828 F.2d 667, 670 (11th Cir. 1987).
[8] *King*, 849 F.2d at 490.
[9] *Id.* ("Adoption of the order obviates the need for the district court to prepare its own written findings of face and statement of reasons supporting pretrial detention.").

6

independent hearing.[10] "[I]f the district court determines that the additional evidence does not affect the validity of the magistrate's findings and conclusions, the court may state the reasons therefor and then explicitly adopt the magistrate's pretrial detention order."[11]

## DISCUSSION

Defendant Aldana did not present any additional evidence at the hearing. She argues, as she did at the initial detention hearing, that the Government cannot carry its burden[12] to prove that no condition or combination of conditions of release could secure her presence for trial because she has no prior criminal history; she is a 30 year old United States citizen who provides the sole support for her three minor children; her children are United States citizens and enrolled in school; she resides in Marietta, Georgia; and the United States has seized her passport. The Government opposes Defendant's release and contends that no combination of conditions will ensure her appearance in court. The

---

10 *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988).
11 *Id*. at 490–91 (It is only necessary for the district court to enter its own findings in writing and a written statement of reasons supporting pretrial detention when: (1) "the district court considers evidence which was *not* considered by the magistrate; or" (2) "the district court adopts the magistrate's recommendation that pretrial detention is necessary but finds that certain of the magistrate's underlying conclusions or factual findings are incorrect or unsupported by the evidence.").
12 Defendant also argues that the Court should find that the Government should be held to the higher burden of proving no condition or combination of conditions of release could secure her presence by clear and convincing evidence. The Court rejects this argument. The Eleventh Circuit requires the Government to show by a preponderance of the evidence that defendants should be detained pending trial because they pose a high risk of flight. *See, e.g., United States v. Medina*, 775 F.2d 1398 (11th Cir. 1985).

7

Court agrees with the Government.

First, the nature and circumstances of the charged offense – Conspiracy to Possess with Intent to Distribute Cocaine—is a serious crime weighing in favor of detention.[13] Indeed, "the government may utilize the statutory presumption found in section 3142(e) that those charged with narcotics offenses often pose an especially high risk of flight."[14] Moreover, Defendant faces a lengthy sentence if she is convicted, which also gives her incentive to flee.[15] Second, the weight of evidence, as proffered by the Government at the original detention hearing, is considerable, and also weighs in favor of detention. Defendant has substantial ties to an international drug trafficking operation, with direct ties to Mexico and to the CJNG drug cartel operating out of Mexico. Defendant frequently travels across the border, and the Court is unconvinced she would be less likely to flee because the United States has seized her passport or that she is monitored.

Although Defendant has provided sufficient evidence to rebut the statutory presumption—she has no prior criminal history and has significant family and community ties—this evidence is not sufficient to outweigh the weight of evidence against her, the lengthy sentence she faces if convicted, her ties to an international drug

---

13 *See* 18 U.S.C. § 3142(g)(1) (stating that the judicial officer should consider whether the defendant has been charged with an offense that involves a controlled substance or firearms).
14 *King*, 849 F.2d at 489.
15 *Id.*

cartel operating out of Mexico, her frequent travel into Mexico, and her ability to flee. The Court finds the Government has proven by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure Defendant's appearance for trial.

## CONCLUSION

Accordingly, Defendant's Petition for Revocation or Amendment of the Magistrate Judge's Detention Order [Doc. 359] is **DENIED**.

It is **SO ORDERED** this 15th day of March, 2023.

s/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT